```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA

BILL M., JOHN DOE, HEATHER      )
V., JANE S., KEVIN V.,          )
JENNIFER T., WILLIAM M., JANE   )
DOE, MARCIA V., PATRICIA S.,    )
KATHY V., SHARON T., and GREG   )
T.,                             )
                                )
            Plaintiffs,         )        4:03CV3189
                                )
     V.                         )
                                )
NEBRASKA DEPARTMENT OF HEALTH   )    REPORT AND RECOMMENDATION
AND HUMAN SERVICES FINANCE      )
AND SUPPORT, NEBRASKA           )
DEPARTMENT OF HEALTH & HUMAN    )
SERVICES, STEPHEN B. CURTISS,   )
and RON ROSS,                   )
                                )
            Defendants.         )
                                )
```

The plaintiffs have filed a motion to certify a class to include:

> all present and future individuals with developmental disabilities in Nebraska who are eligible for Medical Assistance Home and Community-Based Services but either are not receiving funding for such services, or are not receiving sufficient funding for such services to reasonably achieve the purpose of the service, assure the class member's health and safety, or ensure progress toward independence, interdependence, productivity and community integration.

Filing 58.  The named plaintiffs claim over fourteen hundred people are on a list of persons with unmet needs maintained by the State of Nebraska.  They claim that the named State of Nebraska agencies and the individual defendants (collectively referred to hereafter as the "State") use an improper mechanism to determine the level of service the state will fund for each disabled person and that, as a result, a large percentage of

these persons receive inadequate services. The plaintiffs request declaratory and injunctive relief and claim the defendants have violated 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973)(second claim for relief); the Medicaid Act and federal Medicaid regulations (third, fourth, and fifth claims for relief); and the Nebraska Constitution, statutes, and regulations (sixth, seventh, and eighth claims for relief).[1]

A plaintiff moving for class certification has the burden of showing that the class should be certified and that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1004 (8th Cir. 2004); Coleman v. Watt, 40 F.3d 255, 258-59 (8th Cir. 1994). As explained hereafter, upon review of the evidence and pleadings, I conclude that the class proposed by the named plaintiffs lacks a concise and exact definition, and that the plaintiffs have failed to prove the requirements of Rule 23(a)(2)(3) and (4). Therefore, their motion for class certification should be denied.

    A. <u>Class definition</u>.

The plaintiffs' proposed class is broadly defined to include "all present and future individuals with developmental disabilities in Nebraska who are eligible for Medical Assistance Home and Community-Based Services" who are not receiving services due to insufficient funding. The plaintiffs have submitted into

---

[1] The Eighth Circuit has dismissed the plaintiffs' claim based on Title II of the ADA (plaintiffs' first claim for relief) on the basis of sovereign immunity. Bill M. ex rel. William M. v. Nebraska Dept. of Health and Human Services Finance and Support, 2005 WL 1250598 (8th Cir. May 27, 2005).

2

evidence the state's registry of service requests--a listing of all developmentally disabled persons who have requested and are eligible for services (hereinafter referred to as the Registry"). This list, also called the "wait list," provides the date when the requesting party wants the service to begin.  Based on historical averages, approximately two-thirds of the persons listed have past due (over ninety days) needs which have not been met.  The May 2003 Registry lists the names of over one thousand persons, (1,433 by plaintiffs' count), with past due needs.  The proposed class would also include up to 2,200 persons with developmental disabilities who are receiving community-based services which the plaintiffs claim are either inadequate or are at risk of being reduced to an inadequate level.  Filing 60, ex. 2 (Stortenbecker deposition) at 93-106; ex. 3 (Service Requests list); ex. 5 (Sorensen deposition) at 47-51.

      A class must be capable of a concise and exact definition without resorting to court rulings to determine whether someone is a member.  Fuzie v. Manor Care, Inc., 461 F. Supp. 689, 700 (D.C. Ohio 1977).  The class definition proffered by the named plaintiffs is not limited to persons identified on the Registry (which is also consistently modified and updated), but includes unnamed persons who claim to be eligible but who have been determined by the State to be ineligible for services, as well as any future eligible persons.  Since eligibility for services requires an individualized assessment of each disabled person, the proposed class definition requires a factual determination of who is eligible for services.  Therefore, before an adequate determination can be made of who is a class member, this court would be required to decide that a particular person was eligible for Medical Assistance Home and Community-Based Services at the time this suit was filed or, in the case of any injunctive

relief, whether "future" persons seeking to enforce or avoid the injunction are eligible for services.  Since the class is also limited to those who are not receiving services due to lack of funding (as opposed to, for example, lack of community manpower), the court would also have to determine if the failure to provide services was due to lack of funding.

The plaintiffs' proffered class definition essentially eliminates the court's ability to craft a declaratory judgment or a sufficiently specific injunction that would be binding on and capable of being enforced against both parties to this litigation without substantial on-going court supervision and intervention. Allowing a loosely defined and amorphous plaintiff class creates, in essence, a "fail-safe" class–"a class which would be bound by only a judgment favorable to the plaintiffs but not by an adverse judgment."  Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980)(quoting Dafforn v. Rousseau Associates, Inc., 1976-2 Trade Cases P 61,219 (N.D. Ind. 1976).  "In summary, the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable. Hence, for that reason, the plaintiff class cannot be maintained."  Adashunas, 626 F.2d at 603-04 (refusing to certify a class consisting of "all children within the State of Indiana entitled to a public education who have learning disabilities who are not properly identified and/or who are not receiving such special instruction as to guarantee them of minimally adequate education").  See also Metcalf, supra. (refusing to certify a class consisting of public aid recipients who were allegedly denied a livelihood compatible with health and well-being in violation of state statutory law); Fuzie, supra.(refusing to certify a class composed of all Medicaid patients who were

4

discharged from a nursing home "because they were Medicaid recipients").[2]

I therefore conclude that the proposed plaintiff class lacks a sufficiently concise and exact definition, and the class should not be certified.

    B.   <u>Rule 23 of the Federal Rules of Civil Procedure</u>.

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all class members if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

---

[2]Although not addressed by the parties on this motion, the broad and inexact class definition proposed also raises questions of standing.

> [S]ince the proposed class is so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief. If the conceived injury is abstract, conjectural or hypothetical as here, instead of real, immediate or direct [harm or threat of harm], the complaint fails to cite an actual case or controversy under Article III of the Constitution.

<u>Adashunas</u>, 626 F.2d at 604. Although the Eighth Circuit's decision on interlocutory appeal addressed the issue of standing as to the named plaintiffs, the issue of standing for the proposed class was not raised or decided. <u>Bill M. ex rel. William M. v. Nebraska Dept. of Health and Human Services Finance and Support</u>, 2005 WL 1250598 (8th Cir. May 27, 2005).

>   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and,
>
>   (4) the representative parties will fairly and adequately protect the interests of the class.

Id. These prerequisites for class certification under Rule 23(a) are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." General Telephone Co. v. EEOC, 446 U.S. 318, 330 (1980).

In addition to the four requirements of Rule 23(a), the plaintiffs must also satisfy at least one of the requirements of Rule 23(b). Parke, 368 F.3d at 1004. The plaintiffs herein seek class certification under Rule 23(b)(2). They argue "the Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making final injunctive relief or corresponding declaratory relief with respect to the class as a whole an appropriate remedy." Filing 58, ¶ 3. "If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1175 (8th Cir. 1995)(citing 7A Wright, Miller & Marcus, Federal Practice and Procedure § 1775 (2d 1994)). Accordingly, I shall first address whether the plaintiffs have proved the four requirements of Rule 23(a).

In determining whether the plaintiffs have met their burden of proof for class certification, the court considers the pleadings and any evidence presented by the parties. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

<u>Falcon</u>, 457 U.S. at 160.  Although a class determination "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" (<u>General Telephone Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 160 (1982)(citing <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463 (1978)), the court's determination is made without regard to the factual merits or weaknesses of plaintiffs' underlying claims.  <u>Eisen</u>, 417 U.S. at 177-78.  When deciding a motion for class certification, the court accepts the allegations contained in the complaint as true.  <u>Blades v. Monsanto Co.</u>, 400 F.3d 562, 566-67 (8th Cir. 2005); <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 691 F.2d 1335, 1342 (9th Cir. 1982); <u>Shelter Realty Corp. v. Allied Maintenance Corp</u>., 574 F.2d 656, 661 n. 15 (2d Cir. 1978).

    1.   <u>Rule 23(a)(1):  Numerosity</u>.

Rule 23(a)(1) requires the court to determine whether the proposed class is so large in number that joinder of all members is impractical.  <u>Belles v. Schweiker</u>, 720 F.2d 509, 515 (8th Cir. 1983).  Based on the Registry and deposition testimony submitted into evidence, I conclude the plaintiffs have proved the Rule 23(a)(1) requirement.  As stated by the plaintiffs, "[t]his class includes approximately 1,400 persons who have been waiting for services for which they are eligible for over 90 days and up to 2,200 persons with developmental disabilities who are receiving community-based services, which are either inadequate or are at

risk of having their services reduced to an inadequate level." Filing 59 (plaintiffs' brief) at p. 6. The proposed class is very large and joinder of all members is impractical.

> 2. Rule 23(a)(2)(3) and (4): Commonality, typicality, and Adequacy of Representation.

The requirements of Rule 23(a)(2)(3) and (4), also known as commonality, typicality, and adequacy of representation, are interrelated.

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

Falcon, 457 U.S. at 158 n. 13.

The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999); Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Proving typicality requires demonstrating that the members of the proposed class have the same or similar grievances as the named plaintiffs. Paxton v. Union Nat'l Bank, 688 F.2d 552, 562 (8th Cir. 1982). Adequacy of representation focuses on two issues: (1) whether the named plaintiffs who seek authority to be class representatives have common interests with the class members;

8

and, (2) whether these proposed class representatives will vigorously prosecute the interests of the class. <u>Paxton</u>, 688 F.2d at 562-63.

Evaluating commonality requires assessing the specific facts presented for the court's review and determining whether common issues of law and fact exist among the plaintiffs. There are seven named plaintiffs in this case. As alleged in the plaintiffs' amended complaint, each named plaintiff is developmentally disabled and at least twenty-one years old. The plaintiffs all claim they need services and their needs are inadequately met or completely unmet due to inadequate funding and improper administration of legally-mandated programs. They all claim the State's actions and failure to act violate the federal Rehabilitation Act of 1973, Medicaid statutes and regulations, and Nebraska constitutional, statutory and regulatory law.

More specifically, the named plaintiffs' claims, as alleged in the amended complaint, are as follows:

- Bill M. lives with his father. He has behavioral issues that lead to conflict, including occasional fights involving pinching, hitting, or kicking, between him and his father or other family members. John Doe lives with his parents; is hyperactive and does not sleep at night; and disrupts others' lives by making phone calls during the night, entering their homes without consent, and engaging in inappropriate physical conduct. Both Bill M. and John Doe claim they need placement in a community residential facility with specially trained staff because they cannot be adequately cared for and supervised at home; they are at risk of being placed in a more restrictive setting; and they have been indefinitely placed on the State's "wait list"--the "registry of people with unmet needs." Filing 23, Amended Complaint, ¶¶ 48-59.

9

- Heather V. has substantial cognitive and physical disabilities. She is legally blind; experiences periodic grand mal seizures; suffers from hallucinations and delusions; is non-ambulatory; cannot feed herself or care for her own hygiene; and is on numerous medications. She lives in a group home. She does not claim she is at risk of being placed in an unduly restrictive setting or that she is on a "wait list." She claims the State has refused to approve sufficient day service hours to ensure her health and safety or provide adequate habilitation. She claims the State's evaluation of her needs was improperly based on computer calculations and equations, and not a valid and individualized assessment of her disabilities. Filing 23, Amended Complaint, ¶¶ 60-77.

- Jane S. suffers from autism and obsessive-compulsive disorder. She lives in an apartment in the lower level of her mother's home. Before moving to Nebraska, she worked full-time for a thrift store. Since moving to Nebraska, she has received vocational-related day services, but not on a full-time basis and in a structured enclave setting. She essentially claims she is underemployed; that she is capable of working full-time and performing more challenging work, but the State has refused to approve the required additional service hours for her to work and live up to her potential. Filing 23, Amended Complaint, ¶¶ 78-83.

- Kevin V. has autism, epilepsy, and severe to profound mental retardation. He receives "services under the Waiver Program," the exact nature of which is unknown, and alleges he needs one-to-one supervision due to his extensive history of aggressive and disruptive behaviors. He claims the state denied one-to-one funding and, as a result, his former provider could no longer offer him services. He claims he was transferred to a different service provider, who provides 173 hours of one-to-one level services without commensurate funding from the State. Filing 23, Amended Complaint, ¶¶ 84-91.

- Jennifer T. has epilepsy and severe to profound mental retardation and, except in the area of motor skills, functions at the level of a three-year old. Jennifer T. needs a highly structured day program with one-to-one supervision, and not vocational services. She

> needs 173 service hours to ensure her health and safety.  However, the State approved only 97 service hours based on a "blind application" of a "mechanical process" rather than a proper assessment of her actual disabilities and needs.  Despite not being commensurately paid, her service provider provides 173 hours of one-on-one day service each month.  Filing 23, Amended Complaint, ¶¶ 93-99.

- Marcus J. lived at home and was home-schooled until his mother became seriously ill in February 2003.  The State assessed him at that time and determined he was eligible for 99 hours of assisted day services.  On May 1, 2003, he was placed in a nursing home to provide temporary thirty-day respite care while his mother was ill.  He still lives in the nursing home but claims he needs a less restrictive placement in a residential facility adequately staffed by persons trained to work with individuals with developmental disabilities.  Funding for this placement was denied and he was placed on the Registry for Needs.  Filing 23, Amended Complaint, ¶¶ 100-109.

The diverse situations of the named plaintiffs reflect there is no sufficiently discrete question of fact common to the class.  Some claim they have not been properly assessed by the State; others do not challenge the assessment but the services have been denied for lack of funding.  Some claim they have been indefinitely placed on a "wait list" of persons with unmet needs; others claim the State fails and refuses to recognize the extent of their needs.  Some claim they are at risk of being placed in an overly restrictive institutionalized facility; others claim they are already subjected to overly restrictive job or residential placements; and still others claim they need more one-on-one supervision and service hours.

The named plaintiffs essentially share one legal grievance: they claim they have been denied legally-mandated services because the State either denies or improperly administers these

11

services due to lack of funding.  While the commonality requirement deals with shared questions of law or fact, and the plaintiffs need not have identical backgrounds so long as there is a common question of law, not every common question will suffice.  "[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.  What we are looking for is a common issue the resolution of which will advance the litigation."  Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).

A generalized claim for injunctive and declaratory relief to remedy alleged systematic failures in a state's delivery of legally-mandated services does not present a sufficient "common question of law or fact" for the purposes of Rule 23(a)(2).  J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999) (upholding court's finding of no commonality and its refusal to certify a class consisting of mentally or developmentally disabled children who sought declaratory and injunctive relief based on the state's alleged failure to provide services required by federal law).

> We refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements.  Rule 23(a) requires a common question of law or fact.  For a common question of law to exist, the putative class must share a discrete legal question of some kind.

J.B. ex rel. Hart, 186 F.3d at 1289.  "When the resolution of a common legal issue is dependent on factual determinations that will be different for each putative class plaintiff, class certification must be denied."  Reinholdson v. State of Minnesota,  2002 WL 31026580, *8 (D. Minn. Sept. 9, 2002)(denying class certification for lack of commonality where disabled

12

students claimed the state violates the Individuals with Disabilities Education Act ("IDEA") by failing to formulate an individualized education plan ("IEP") tailored to the disabled child's unique needs).

The diversity of the proposed class also militates against finding that the plaintiffs have proved that their claims are representative of the class members' claims. In addition to case management, the needs listed on the Registry range from supported (continuous supervision) to assisted (intermittent supervision) day services, residential services, and vocational services. The listing also includes requests for temporary respite care, and evaluation of or assistance with home or nursing home care. Filing 60, ex. 2 (Stortenbecker deposition) at 93-106; ex. 3 (Service Requests list). Since highly case-specific circumstances apply to each disabled person, I cannot conclude that the claims of the seven named plaintiffs are typical of the claims of the over 1400 persons they propose to represent. In fact, the diverse needs identified in the Registry serve to further support my opinion that any claims by disabled persons identified therein should evaluated as on an individual basis and not on the basis of class membership.

Finally, the diversity of needs within the proposed class raises questions concerning whether the seven named plaintiffs can adequately represent the interests of the class throughout this litigation. The court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case. <u>Vervaecke v. Chiles, Heider & Co., Inc</u>., 578 F.2d 713, 719 (8th Cir. 1978). Adequate representation of all class members is of critical importance, and perhaps especially so in cases pursuing class certification under Rule 23(b)(2) because class members are

not permitted to "opt-out" of the class.  <u>Paxton</u>, 688 F.2d at 558-59.

    The primary issue raised in this case is the State's alleged failure to adequately fund services for disabled adults.  Money is, unfortunately, a finite commodity.  The court does not question that at this point in time, the named plaintiffs stand willing to advocate on behalf of all class members on the broadly defined issue of funding legally-mandated programs for the disabled.  But the alleged unmet needs of the proposed class are so diverse and the legal and regulatory issues so multifaceted that conflicts of interest are foreseeable between the named plaintiffs and other class members.  For example, if the State agreed to settle this case by funding vocational services but not community residential facilities, or even advocated that the law supported, at most, this result, the interests of Bill M. and John Doe (who have community residential facility needs) would conflict with the interests of Jane S. and all other members of the class with vocational needs.

    To be given the authority to represent a class, a named plaintiff must also have the ability and willingness to vigorously prosecute the interests of the class with the assistance of qualified counsel.  <u>Paxton v. Union Nat'l Bank</u>, 688 F.2d 552 (8th Cir. 1982).  Based on the court's past experiences with the proposed class counsel and their affidavits of record (filing 60, ex. 6 (Rowe affidavit); ex. 4 (Mason affidavit)), I find that the proposed counsel are able, willing, and motivated to zealously represent the class.  However, the obligation to provide adequate representation does not rest solely with counsel; the named plaintiffs as proposed class representatives have a substantial responsibility.  The lack of common interests

between the named plaintiffs as proposed class representatives and the class, and the foreseeable risk that conflicts of interest may arise, warrants finding that the named plaintiffs have failed to prove they can adequately represent the class as required under Rule 23(a)(4).[3]

For all the foregoing reasons, I shall therefore recommend denial of the plaintiffs' motion to certify a class.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b) that the plaintiffs' motion to certify a class, filing 58, be denied in all respects.

The parties are notified that a failure to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

DATED this 20th day of June, 2005.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge

---

[3]The plaintiffs have not proposed, and I have not considered, whether a class action could be pursued by creating subclasses within the class.