```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA
```

BILL M., et al.,                )
                                )
            Plaintiffs,          )
                                )                4:03CV3189
       v.                       )
                                )
NEBRASKA DEPARTMENT OF HEALTH   )
AND HUMAN SERVICES FINANCE      )    REPORT AND RECOMMENDATION
AND SUPPORT, et al.,            )
                                )
            Defendants.          )
                                )

Pending before me is the plaintiffs' second motion to certify a class and for appointment of class counsel. Filing 138. The court previously denied certification of a class defined to include:

> All present and future individuals with developmental disabilities in Nebraska who are eligible for Medical Assistance Home and Community-Based Services but either are not receiving funding for such services, or are not receiving sufficient funding for such services to reasonably achieve the purpose of the service, assure the class member's health and safety, or ensure progress toward independence, interdependence, productivity and community integration.

See filings 86 & 106.

The plaintiffs have since filed a second amended complaint, filing 126. The second amended complaint deletes Marcus J. as a named plaintiff and adds the following named plaintiffs: Leslie H., Catherine M., Stephanie B., Conrad J., Christopher H., and Michael R. The second amended complaint, and the plaintiffs' second motion for class certification, sets forth a different definition for the proposed class. Filing 126 (Second Amended Complaint), ¶ 22.

Having reviewed the plaintiffs' second amended complaint and the parties' evidentiary submissions, I conclude that the plaintiffs' second motion for class certification, filing 138, should be denied.

THE PLEADINGS AND EVIDENCE

Class determinations generally involve "considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982). Although the issues may be "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim," it may also be necessary to "probe behind the pleadings before coming to rest on the certification question." Falcon, 457 U.S. at 160.

The named plaintiffs' second motion for class certification follows the filing of their second amended complaint. The second amended complaint was filed in response to the Eighth Circuit's determination that certain claims raised in the amended complaint must be dismissed under the Eleventh Amendment.

In support of their new motion for class certification, the plaintiffs rely on the allegations of the second amended complaint, the affidavits of proposed class counsel, Bruce Mason and David Rowe, (see filing 140), and the evidence offered in support of the plaintiffs' first motion for class certification. See filing 60. The defendants oppose the plaintiffs' second motion for class certification, and in support of their position, have submitted a spreadsheet listing the Health and Human

Services ("HHS") data pertaining to each of the named plaintiffs. Filing 144, ex. 1.

The plaintiffs' lawsuit centers on a claim that Nebraska violates federal and state law by failing to properly and lawfully allocate funding to individuals with developmental disabilities who are eligible for Medical Assistance Home- and Community-Based Services.  The first amended complaint alleged that Nebraska's use of a "flawed mechanism for determining the appropriate level of [Home- and Community-based] service for each individual" created inadequate access and a wait list for receipt of such services.  Filing 23 (Amended Complaint), ¶ 17.  The plaintiffs' second amended complaint identifies the name of this allegedly flawed methodology as the "Objective Assessment Process" ("OAP").  Filing 126 (Second Amended Complaint), ¶ 22. See also Neb. Rev. Stat. § 83-1216 (2007).  Both complaints seek to enjoin the use of this methodology, and to compel Nebraska to use a lawful method when allocating the financial resources for services provided developmentally disabled persons.

The second amended complaint alleges the OAP is used by Nebraska "for determining the level of funding for Home and Community-Based Services which will be provided to each recipient of such services" which, in turn, "effectively determines the amount, duration and scope of the services furnished to Plaintiffs and similarly situated individuals."  Filing 126 (Second Amended Complaint), ¶ 113.[1]  The named plaintiffs allege

---

[1]The plaintiffs' reply brief explains:

> The OAP involves administering a pencil and paper survey known as the Inventory for Client and Agency Planning ("ICAP").  An employee located in the central office of HHS in Lincoln receives a completed ICAP for

the OAP "is arbitrary, inflexible, excludes necessary input, and routinely results in the under funding of services such that provided Home and Community-Based Services are not sufficient in amount, duration and scope. . . ." Filing 126 (Second Amended Complaint), ¶ 115.  They claim the OAP is a "fundamentally flawed" mechanism "incapable of accurately assessing and determining the scope of services for recipients," and that defendants' use of this methodology has resulted in unlawful funding restrictions for plaintiffs' access to home and community-based developmental disability services, and unlawfully long delays in receiving these services.  Filing 126 (Second Amended Complaint), ¶ 1.  The list of those waiting to receive services is known as the "Register of Persons with Unmet Needs." Filing 126 (Second Amended Complaint), ¶ 94.

Accordingly, as set forth in the second amended complaint, the plaintiffs' proposed class is now defined as:

> All residents of Nebraska with developmental disabilities who have requested home or community-based services and who either have had the extent of their services determined by the State's use of the "Objective Assessment Process" ("OAP") or have been

---

> each applicant for services.  That employee computes certain ICAP sub-scale scores, and plugs those sub-scale scores into a formula which in turn yields one specific, bottom-line number.  That number represents the dollars which the Defendants will make available to the applicant for home and community-based developmental disability services under the Medicaid waiver for adults with developmental disabilities.

Filing 150 (Plaintiffs' Reply Brief), p. 3.  The plaintiffs do not cite to evidence supporting this statement.  However, a brief overview of the OAP is described in the record.  See filing 60, ex. 5 (Sorensen deposition), pp. 40-42, 55.

4

>     placed on a wait list (the "Register of Persons with
>     Unmet Needs") for such services.

Filing 126 (Second Amended Complaint), ¶ 22.

I need not reiterate the distinct disabilities and needs of named plaintiffs Bill M., Heather V., Jane S., Kevin V., and Jennifer T., as that topic was explored and discussed in the court's prior report and recommendation on plaintiffs' first motion for class certification. See filing 86 (Report and Recommendation), pp. 9-11. Like the previously named plaintiffs, the new named plaintiffs, Leslie H., Catherine M., Stephanie B., Conrad J., Christopher H., and Michael R., have vastly different problems and needs. See filing 143, ex. 1. The named plaintiffs claim that with respect to the allegations set forth in their second amended complaint, their interests are typical of the class they propose to represent because they have all been wait-listed and will be subject to the defendants' wait list in the future, and they have all had, or will have, the extent of their services determined by the OAP. Filing 126 (Second Amended Complaint), ¶ 26. See also id., ¶¶ 54-90.

As applicable to the defendants' use of the OAP, the named plaintiffs claim they and the other members of the putative class share the following questions of law and fact:  whether the defendants have violated federal Medicaid law, the ADA, and Section 504, as well as applicable state law, by adopting and using the OAP methodology to allocate funding to each eligible individual for their developmental disabilities services when these methodologies are "arbitrary, inflexible, and fail to obtain necessary input, and when those practices routinely result in the under funding of services." Filing 126 (Second Amended Complaint), ¶¶ 24(d) & 25 (d). See also id., ¶¶ 90-120.  With

respect to the wait-list issue, the common question of law and fact cited is whether the defendants have violated federal Medicaid law, the ADA and Section 504 by adopting and using a practice which fails to timely provide Medicaid-funded community-based services.  Filing 126 (Second Amended Complaint), ¶¶ 24(a) & 25(a).  See also id., ¶¶ 90-112.  Finally, the named plaintiffs claim they and all putative class members share common questions of law and fact concerning whether they are entitled to notice and an opportunity to be heard when Medicaid-funded home or community-based services are denied, and whether the defendants have violated the ADA by failing "to provide individuals who are eligible for developmental disabilities services with such services in the most integrated setting appropriate to them."  Filing 126 (Second Amended Complaint), ¶¶ 24(b & c) & 25(b & c).

>In summary, the named plaintiffs argue:
>
>[T]he Second Amended Complaint does not seek any individualized relief and does not require any significant factfinding to determine class membership.  Rather, class membership is readily apparent from records maintained by Defendant.  Those records include the register of persons with unmet needs and records of all persons currently receiving any degree of developmental disability services.  All class members have had their services determined by the Defendants' OAP or have been placed on a wait list for such services.  All such class members will be subject to being placed on a wait list and having their services determined by the Defendants' OAP on any further request for services or a change in the amount of their services.  All class members are affected by the Defendants' two policies in these areas, and all have an interest in ensuring that Defendants' policies in these areas comply with applicable federal law.  The named plaintiffs will be adequate, representative plaintiffs, and all other requirements for certifying a class action are met.  The court should certify the class as defined in the Second Amended Complaint.

Filing 150 (Plaintiffs' Reply Brief), pp. 10-11.

ANALYSIS

The factual basis, cited case law, and arguments raised on plaintiffs' second motion for class certification are essentially the same as those raised on the first motion. The amended and second amended complaints seek identical injunctive relief, including an order requiring the defendants to "[a]dopt a sound, valid methodology for properly determining payment levels for Home and Community-Based Services provided to each eligible individual which ensures that each individual will receive a level of service appropriate to their needs." Filing 23 (Amended Complaint), Prayer for Relief, ¶ E(vi); filing 126 (Second Amended Complaint), Prayer for Relief, ¶ E(vi). Both complaints seek orders declaring that Nebraska's methodology for allocating funding for Home- and Community-based Services violates federal and state law, and both complaints seek orders compelling the defendants to adopt sound and valid methodologies. Filing 23 (Amended Complaint), Prayer for Relief, ¶¶ H-M; filing 126 (Second Amended Complaint), Prayer for Relief, ¶¶ D, H-K. Though the second amended complaint sets forth a new proposed class definition, the gravamen of the plaintiffs' claims remains the same.

Therefore, the question before the court is whether the change in plaintiffs' proposed class definition warrants a change in the court's ruling on plaintiffs' motion for class certification. The plaintiffs argue that by changing the definition, they have corrected their previous definition by eliminating the court's need to conduct factfinding to determine class membership. I agree that this specific problem with the prior proposed definition has been remedied by the new definition. The plaintiffs' prior definition included persons

receiving "funding that is 'insufficient' to 'reasonably achieve the purpose of the service', 'assure the class member's health and safety', or 'ensure progress toward independence, interdependence, productivity and community integration' are class members," (filing 106 (Memorandum and Order), p. 2), with the court left to determine, on a case-by-case basis, whether a specific individual was allegedly denied services due to inadequate funding and was therefore a member of the class.  Id.

However, unlike the prior definition, the plaintiffs' new definition includes persons who are identified on at least one of two lists:  the "Register of Persons with Unmet Needs," and/or the list of those who have been involved in the OAP.  The court can ascertain the members of the proposed class by reference to these lists, and without investigating each putative member's individual circumstances.  As such, as described in the second proposed class definition, the identity of the putative class members is sufficiently specific and ascertainable.

However, the newly proposed class definition does not serve to correct the commonality, typicality, and adequacy of representation issues raised by the plaintiffs' class certification motion.  The focus of the plaintiffs' lawsuit is on Nebraska's methodology for allocating funding for developmental disability services, and the essence of their claim is that this methodology fails to sufficiently consider all relevant criteria and the individual circumstances of each person applying for services.  The plaintiffs have now identified the specific methodology, the OAP, which allegedly serves as a touchstone in denying their rights under federal and state law, and they seek to enjoin Nebraska from using this policy.  However, while the OAP is a specifically formulated process, it is nonetheless

applied on a case-by-case basis to each individual person seeking Home and Community-Based Services.  Though the plaintiffs claim the OAP is flawed, arbitrary, and fails to consider all relevant information, they have not identified any specific criteria that are either unlawfully considered or ignored.  For example, they do not claim the OAP unlawfully eliminates or hinders delivery of benefits to persons suffering from a specific type of illness or disability, nor do they allege that any discrete criteria must be added or deleted from the OAP for the benefit of all class members.  See e.g. Gratz v. Bollinger, 539 U.S. 244, 268 (2003)(upholding class certification where the named plaintiff challenged a university's use of race as a criterion in undergraduate admissions).

Instead, the named plaintiffs claim that the OAP did not serve to correctly assess their individual circumstances and funding needs, thereby depriving them or delaying their receipt of government benefits, and therefore the OAP itself is fundamentally flawed and invalid as applied to all putative class members, has caused or poses the risk of causing harm to all such persons, and Nebraska's use of the OAP must be enjoined.

The plaintiffs' argument is analogous to the "across-the-board" rule rejected in Falcon.  As such, they have failed to prove the requisite commonality and typicality for class certification.  Applying the principles in Falcon, there is a "wide gap" between the named plaintiffs' claim that they have been harmed by Nebraska's method of allocating funding for developmental disability services, and their claim that Nebraska's OAP harms all developmentally disabled persons who have undergone this process.  A similar gap exists between the named plaintiffs' claim that those putative class members who are

suffering a similar harm (e.g., being wait-listed for services) share common questions of law and fact such that the named plaintiffs' claims are presumptively typical of the class as a whole.  <u>Falcon</u>, 457 U.S. at 157 (holding that racial discrimination is, by definition, class discrimination, but rejecting class certification for lack of commonality and typicality where the named plaintiffs alleged they were discriminated against in seeking promotions, but failed to show their experience was typical of other employees or that company's application of its hiring and promotion policy was based, in part, on racial criteria).  Though the named plaintiffs challenge the OAP as unlawful under federal and state law, and wish to do so on behalf of all who have been evaluated by that process, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."  <u>Elizabeth M.</u>, 458 F.3d at 787.

The named plaintiffs claim they can adequately represent all persons who have undergone the OAP process because their lawsuit seeks a change in policy and not "relief based on the fact the Plaintiffs are receiving less service than they are eligible for."  Filing 150 (Reply Brief), p. 6.  The named plaintiffs are a highly diverse group with diverse needs, and the class they propose to represent will include an even more diverse population.

Named plaintiffs who seek to represent a class must show: (1) they and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and

viewpoints will diverge.  Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997); Caroline C. By and Through Carter v. Johnson, 174 F.R.D. 452, 466 (D. Neb. 1996).  Though the named plaintiffs' litigation is focused on securing rights for all putative class members, it is very unlikely that the named plaintiffs' perception of what is fair and relevant in the funding process would be uniformly endorsed by those unnamed class members who have significantly different needs.[2]  Despite the assistance of their diligent, motivated, and highly competent proposed class counsel, the named plaintiffs may simply never be able to fully present to the court all the circumstances and needs faced by all these putative class members in advocating to enjoin the OAP and compel an appropriate replacement process.[3]  Accordingly, it is

---

[2]The increased specificity in the new class definition highlights the adequacy of representation issue.  Unlike the first proposed definition, the new class definition does not limit the class members to those whose services are underfunded.  The second proposed class includes everyone who has received a funding determination through the OAP.  Therefore, the proposed class as now defined may include putative class members who, if given the opportunity, would advocate for the status quo because they are satisfied with the funding currently provided, are receiving services, and do not want the State's funding allocation method to be changed.

[3]Likewise, a court cannot issue opinions based on a hypothetical set of facts, nor ascertain the interests of those not before the court, nor accurately anticipate potential future events that may require court intervention.

> The federal courts established pursuant to Article III of the Constitution do not render advisory opinions.  For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite.  This is as true of declaratory judgments as any other field.

KCCP Trust v. City of North Kansas City, 432 F.3d 897, 899 (8th Cir. 2005).

foreseeable that the outcome of the named plaintiffs' zealous attempt to represent the differing needs of such a diverse group will inadvertently result in a funding allocation method that, when applied, decreases rather than increases funding for some putative class members.  Under such circumstances, the named plaintiffs cannot adequately represent all putative class members.  The named plaintiffs lack standing to represent those putative class members with dissimilar needs and interests in this litigation.  See e.g. Blum v. Yaretsky, 457 U.S. 991, 996 n. 7, 1001-02 (1982)(holding that named plaintiffs who claimed they were threatened with transfers to lower levels of Medicaid-funded care based on state "Utilization Review Committee" ("URC") findings that were allegedly arbitrary and based on inadequate criteria lacked standing to represent absent class members challenging URC-transfers to higher levels of care).

The plaintiffs' lawsuit seeks declaratory and injunctive relief and class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Any prospective relief ordered may impact the putative class plaintiffs' living conditions and access to community resources for a lifetime.  The court must always diligently consider the potential unfairness to unnamed class members who will bound by a judgment if the putative class lacks commonality and is overbroad.  Falcon, 457 U.S. at 157.  See also In re St. Jude Medical, Inc., 425 F.3d 1116, 1121 (8th Cir. 2005)("Because 'unnamed members are bound by the action without the opportunity to opt out' of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class.").

"[B]efore certifying a class seeking broad injunctive relief against a state agency, a district court must ensure that it has

Article III jurisdiction to entertain each claim asserted by the named plaintiffs . . ., [a]nd the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." Elizabeth M., 458 F.3d at 784 (citing Falcon, 457 U.S. at 161). Having evaluated the facts and allegations presented in this case, both now and on plaintiffs' prior motion for class certification, I conclude the plaintiffs' proposed class lacks sufficient commonality for class certification, and the named plaintiffs have failed to show that their interests are typical of the class as a whole. I further conclude that the diverse circumstances and the potentially divergent interests of the putative class members undermine the ability of the named plaintiffs to adequately and fairly represent the interests of the proposed class.

    IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b) that the plaintiffs' motion to certify a class, filing 138, be denied.

    The parties are notified that a failure to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

    DATED this 22nd day of June, 2007.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge

13